**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>           Plaintiff,<br><br>   vs.<br><br>SCOTT C. JUDAH,<br><br>           Defendant. | 3:11-po-032-JDR<br>3:11-po-033-JDR<br><br>**MEMORANDUM  OPINION**<br><br>**Trial by Court** |

Defendant **SCOTT  C.  JUDAH** was named in two violation notices charging (1) that on or about March 1, 2011 in the Mystery Creek Road System in the Kenai National Wildlife Refuge he did attempt to trap wolverine after the season closed in violation of 5 AAC 84.270(14)[1], and (2) using a cubby set after the close of lynx season.[2] The two charges were tried to the court on January 11, 2012. Upon due consideration of the evidence adduced and arguments of the parties the court finds Judah *guilty* of attempting to trap wolverine after the season closed and *not guilty* of using a cubby set after the close of lynx season.

---

[1] Violation Notice No. 0735789.

[2] Violation Notice No. 0735790.

**Findings of Fact**

On March 1, 2011, Gary Titus, a officer with the Kenai National Wildlife Refuge was patrolling with Officer Jim Hillgren in the Mystery Creek area within the Kenai National Wildlife Refuge in Game Management Unit 15. During the patrol he observed tracks going to a stream. Officer Titus followed those tracks and observed what he described as a "cubby set" placed into a bank with a 330 Conibear trap placed at the entrance. (Hereinafter Trap No. 1). Officer Titus described the trap setting as a cubby covered with some cut material and other dead material going into a hole into the bank. It had a Conibear trap set at the entrance with a tunnel leading back and bait at the rear of the tunnel. The back of the tunnel was built into the bank, a natural hole.

As the officers continued their patrol south on the Mystery Creek pipeline to another stream bed they observed footprints leading down stream. There they observed a "cubby" built into the bank with a 330 trap placed at the entrance. (Hereinafter Trap No. 2). The 330 trap is shaped in a square with a trigger in the center, springs coming off the side, and tie wires to hold it onto a cross piece. Both traps were removed from site and seized for evidence. The officers took photographs of the trap settings. Officer Titus did not smell any bait or scent at either of the two sets.

As the officers were leaving they notice a snow machine heading in their direction. The driver stopped his snow machine in front of the officers. Scott Judah jumped off the snow machine and started talking very rapidly to the officers. He stated he knew the season for wolverine was closed and "they were in violation." He also stated that he was trapping with Mike Crawford. He said they had four sets out for wolverine and he had already picked up one set.

The traps had tags on them with the name Mike Crawford. Scott Judah and Mike Crawford trapped together using the same trap tags. The officer considered both Judah and Crawford responsible for the sets because their Special Use Trapping Permits identified those tag markings to be used by each of them.

Scott Judah signed a Special Use application and received a trapping permit for the year 2011 which he also signed. Judah is accused in the first Violation Notice of violating Special Condition No. 1 of his Special use Permit by "attempting to trap wolverine out of season." Special Condition No. 1, (State and Federal Requirements) reads: "Trapping will be done in compliance with State game laws and regulations, and may be further restricted by general and special conditions of the Refuge Trapping Permit. Permittees will also comply with all other regulations and conditions affecting access to and use of the Kenai National Wildlife Refuge."

The second Violation Notice alleges a violation of Special conditions specific to the Kenai National Wildlife Refuge No. 7 which provides: "Cubby and flag

sets are not allowed when the lynx season is closed." The officer explained that the purpose of this Permit condition is to prevent the capture of lynx when the lynx season is closed. Lynx season closed February 15, 2011 and wolverine season closed February 28, 2011.

Officer Titus described a flag set as a different type of set from a cubby. He stated: "It can be just a flag or CD hanging with a trap placed underneath it." Trial Transcript, 26. In the officers' opinion using a cubby set on its own (without a flag) could still capture a lynx. He stated that cubby sets are used for trapping lynx and wolverine.

Officer Titus stated that for a trapper to learn more about a cubby set, the trapper would need to go to books, magazines, internet and a variety of materials published about trapping. Some of the materials referenced by the officer such as the Alaska Trapper's Manual (September 2003), depicted a Conibear style cubby set for trapping lynx, marten or wolverine (p.61) and a leg hold cubby set for catching lynx, marten or wolverine (P.62). Both of these diagrams depict an "attractor," sometimes called a "flag." On page 68 of that Manual is a diagram and discussion of a cubby set with a tip up pole for trapping marten. This cubby set shows no attractor. The Trapper's Manual is not required reading for trappers using the refuge.

According to Officer Titus all cubbies have one entrance. Cubbies can vary in shapes, sizes and coverings. It can be natural or constructed.

In his experience as a trapper Officer Titus trapped for lynx using a leg-holder trap at the entrance of a cubby placed on a snow shoe trail without an attractant. The officer stated he did not need an attractant because he placed a scent at the back of the cubby.

According to Officer Titus the two sets were not commonly used to catch larger animals such as wolf or coyote because rarely will such an animal would stick its head into a cubby with a 330 trap at the entrance. He explained that lynx is attracted to a small space such as a cubby with bait at the back, whereas a wolf is a very leery animal generally suspicious of anything not natural.

## Discussion

### Attempting to Trap Wolverine After Season Closed

The first violation, charging attempting to trap out of season, is governed by three legal sources. The first is 16 U.S.C. § 668dd. This is the catch-all general provision governing the National Wildlife Refuge system. Subsection (a) governs refuge lands in Alaska. Subsection (f) addresses penalties.

The second source is Title 50 of the Code of Federal Regulations "Wildlife and Fisheries." Subchapter C governs "The National Wildlife Refuges." 50 C.F.R., Subpart D, includes 36.32 the "Taking of Fish and Wildlife and states:

"The following provision shall apply to any person while engaged in the taking of fish and wildlife within an Alaska National Wildlife Refuge:

> (1) Trapping and sport hunting.
> (i) Each person shall secure and possess all required State licenses and shall comply with the applicable provisions of State law unless further restricted by Federal law;
> (ii) Each person shall comply with the applicable provisions of Federal law;
> (iii) In addition to the requirements of paragraphs (a) and (b) of this section, each person shall continue to secure a trapping permit from the appropriate Refuge Manager prior to trapping on the Kenai . . . Refuge [ ].

50 C.F.R. 26.22 gives general exceptions for entry and (b) states:

> (b) A permit shall be required for any person entering a national wildlife refuge, unless otherwise provided under the provisions of subchapter C. The permittee will abide by all the terms and conditions set forth in the permit.

50 C.F.R. 28.31 is entitled "General Penalty Provisions" and applies to "any person who violates any of the provisions, rules, regulation, posted signs, or special regulations of this subchapter C . . . ." *See* 50 C.F.R. 28.31(a). Both 36.32 and 26.22 fall under Subchapter C. Section 28.31(b) states:

> (b) Failure of any person, utilizing the resources of any national wildlife refuge or enjoying any privilege of use thereon for any purpose whatsoever, to comply with any of the provisions, conditions, restrictions, or requirements of this subchapter C or to comply with any applicable provisions of Federal or State law may render such person liable to:

> (1) The penalties as prescribed by law. ( Sec. 4, 76 Stat. 654, **16 U.S.C. 460k-3**; Sec. 4, 80 Stat. 927, as amended, 16 U.S.C. 668dd(e); Sec. 7, 60 Stat. 1080, 16 U.S.C. 666a; Sec. 6, 40 Stat. 756, as amended, 16 U.S.C. 707; Sec. 7, 48 Stat. 452, 16 U.S.C. 718g; Sec. 2, 33 Stat. 614, as amended, 18 U.S.C. 41.). (Emphasis added).

The cited U.S. Code Section bolded above (16 U.S.C. § 460K-3) contains the following language:

> The Secretary may establish reasonable charges and fees and issue permits for public use of national wildlife refuges, game ranges, national fish hatcheries, and other conservation areas administered by the Department of the Interior for fish and wildlife purposes. The Secretary may issue regulations to carry out the purposes of this subchapter. **A violation of such regulations shall be a misdemeanor with maximum penalties of imprisonment for not more than six months, or a fine of not more than $500, or both.** The provisions of this subchapter and any such regulation shall be enforced by any officer or employee of the United States Fish and Wildlife Service designated by the Secretary of the Interior. (Emphasis added).

Violation Notice 0735789 alleges that Judah attempted to trap wolverine outside of the trapping season in Game Management Unit 15. AS 16.05.255 provides in pertinent part: "(a) The Board of Game may adopt regulations it considers advisable in accordance with AS 44.62 (Administrative Procedure Act) for . . . (2) establishing open and closed seasons and areas for the taking of game.

Under Alaska law "trapping" is defined as "The taking of mammals declared by regulation to be furbearers." AS 16.05.940(36). "Take" is defined as

"taking . . . trapping . . . or attempting to take . . . trap, or any manner capture or kill . . . game." AS 16.05.940(34).

The third relevant legal source is 5 A.A.C. 84.270 which gives the trapping seasons for legally hunting furbearers including wolverine in the different game units in Alaska. Subsection 270(14) set the season for wolverines in Game Unit 15 to run from November 10 - February 28 with no bag limit. Judah is alleged to have attempted to trap wolverine on March 1, 2011. That regulation is made applicable by 5 AAC 84.260 which provides: "It is lawful to trap a furbearer only in a game management unit or a portion of a unit open to trapping in accordance with the open season and bag limit prescribed in 5 AAC 84.270. Bag limits and open seasons are based upon the regulatory year." 5 AAC 84.270. Thus, trapping a furbearer out of season in Game Unit 15 is unlawful under Alaska law.

Judah with the help of his trapping partner Michael Crawford, attempted to trap fur bearing animals within the Refuge by setting the two traps seized by Officer Titus on March 1, 2011, in the Mystery Creek Road System within the boundaries of the Kenai National Wildlife Refuge, Game Management Unit 15. The traps were set to catch wolverine or any other furbearer in season. Trapping for wolverine in this area with a permit during the open season is not prohibited by the law. Traps No. 1 and No. 2 were set before the wolverine trapping season had closed.

To "attempt" an offense means wilfully to do some act, in an effort to bring about or accomplish something the law forbids to be done. Devitt and Blackmore Jury Instructions, Section 14.21. A conviction for an attempt requires proof of both "culpable intent" and "conduct constituting a substantial step toward commission of the crime that is in pursuit of that intent." United States v. Buffington, 815 F.2d 1292, 1301 (9th Cir. 1987); United States v. Snell, 627 F.2d 186, 187 (9th Cir. 1980), cert. denied 450 U.S. 957 (1981). The evidence establishes the existence of both elements. A "substantial step" is "conduct strongly corroborative of the firmness of the defendant's criminal intent." Id. "Culpable intent" can be inferred from a particular defendant's conduct and from the surrounding circumstances. Buffington at 1302.

Judah clearly intended the trap sets to attract a wolverine regardless of whether the settings constituted a cubby as argued by the government. The season was still open to trap a coyote, beaver or wolf. As Judah admitted, when confronted by Officer Titus, the sets were for wolverine and he knew the season for trapping wolverine had closed.

By leaving the traps in place after February 28, 2011, he negligently engaged in trapping wolverine out of season in violation of Alaska State law. Proof that Judah knew the traps remained set after the close of the wolverine season for

Game Unit 15, satisfies the mens rea element under § 668dd(f)(2).[3] Judah failed to comply with applicable State law in violation of 50 C.F.R. 26.22(b) and 28.31(b). *See* Orr-Hickey v. State 973.P.2d 612 (Ak. App. 1999) (hunting sheep in a closed area), citing State v. Rice, 626 P.2d 104, 110 (Alaska 1981) (civil negligence is the culpable mental state that governs hunting offenses under Alaska State law).  Judah is guilty of attempting to trap wolverine after the season closed as charged in Violation Notice 0735789.

## Violation of Special Use Permit
## Using a Cubby Set After Close of Lynx Season

Violation Notice 0735790, charges that Judah used a cubby set after close of lynx season by violating Special Condition specific to the Refuge, number 7 of his permit and 50 C.F.R. 26.22(b).   Title 50 C.F.R. § 26.22(b) entitled General exception for entry, covers exceptions for entry in a National Wildlife Refuge (of which the Kenai Refuge is a part).  The relevant portion of § 26.22 is as follows:

> (b) a permit shall be required for any person entering the National Wildlife Refuge, unless otherwise provided under the provisions of subchapter C.  The permittee will abide by all the terms and conditions set forth in the Permit.

---

[3] The government argues that the offenses charged invoke a strict liability and there is no other culpable mental state required.  Under the evidence presented the government has proved criminal negligence.

Special Condition No. 7 (specific to the Kenai National Refuge) reads: "Cubby and flag sets are not allowed when the lynx season is closed." Lynx season for the Refuge closed February 15, 2011. The parties disagree as to the definition of a cubby set as used in Special Condition No. 7 and whether Judah had a trap set up after the close of lynx season that is prohibited by that Permit limitation. Refuge Officer Titus interprets Special Condition No. 7 to prohibit a cubby set, a flag set, or a cubby and flag set.

Cubby sets are used to catch a variety of furbearers. The basic description of a cubby addresses the structure of the tunnel or cave like inclosure designed to lead the animal past a trap to reach bait. "The main idea behind a cubby is to make a structure that will guide the animal into an area where you have placed bait and lure. The cubby provides cover for the trap and bait as well." Alaska Trappers Manual, Exhibit 10, p.61. The Alaska Trapper's Manual suggests using the 330 Conibear style trap for lynx or wolverine and recommends a different size for marten. *Id*. at 61.

The government concedes that Trap No. 1 displayed in Exhibits 1 - 3, did not constitute a cubby because the setting had a second tunnel under a log by which an animal could enter and retreat without passing by or through the (conibear) trap. The basic description of a cubby addresses the structure of the tunnel or cave like enclosure designed to lead the animal past a trap to reach bait. The second trap

discovered by Officer Titus arguably met the definition of a cubby set. The illustrations and the materials admitted at trial as exhibits show a simpler structure as a cubby.

Considering the evidence adduced at trial the ambiguity of the language in Special Condition No. 7 becomes apparent. There appears to be a wide disparity among the trapping community and the wildlife officers as to what constitutes a cubby set. A trapper can have a cubby set without a flag. A trapper may have a flag set without the use of a cubby. Or, a trapper may use a cubby and flag set to trap furbearing animals.

It is undisputed that Special Condition No. 7 is intended to protect the lynx population. Thus, use of a "cubby and flag set" on the Kenai National Wildlife Refuge is conditioned upon whether the lynx season is closed. In this case the lynx season closed February 15, 2011.

The reference to "cubby and flag sets" in Special Condition No. 7 is ambiguous with respect to the meaning of those words. This Special Condition is unconstitutional because its language is so vague as to whether a cubby without a flag is prohibited that it permits arbitrary enforcement. Prohibited use of a cubby set for the entire year when lynx season is closed would preclude significant trapping in that area for lawfully trapping other fur bearing animals.

A lynx hunts primarily by vision which is why trappers place an attractor or a flag at a trap site to attract the attention of the lynx. Judah's second trap did not have a flag or an attractor. Moreover, the evidence indicates that scent had been placed at the trap to attract a wolverine.

If the phrase "cubby and flag set(s)" is read as a single requirement then Judah's second trap did not fall within the prohibition of Special Condition No. 7, because there was no flag. If Special Condition No. 7 was meant primarily to protect lynx it could have specified that "cubby and flag sets or flag sets" are not allowed after the close of lynx season. If the condition was meant to prohibit the use of a cubby for any furbearer after the close of lynx season it could have so stated, for example: Use of a cubby set with or without a flag is not allowed when the lynx season is closed.

The meaning of "cubby and flag set" has been debated frequently at recent annual trappers association meetings in Kenai, Alaska attended by the Refuge officer. Officer Titus agreed that the phrase needs to be clarified. Judah argues that the language of the Special Condition No. 7 is unconstitutionally vague. As the language exists in the Permit it is subject to vagueness because it allows persons, including law enforcement officers, trappers, and orientation instructors to construe the language differently. A statute is unconstitutionally vague as applied if it does not provide the defendant adequate notice of what conduct is prohibited.

<u>Rojas-Garcia v. Ashcroft</u>, 339 F.3d 814, 822 (9th Cir. 2003).  This constitutional principle applies with equal force to the language of a permit where the government seeks criminal enforcement of proscribed conduct in that permit.  A statute is void for vagueness if it "(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement."  <u>United States v. Ayala</u> 35 F.3d 423, 424-25 ((9th Cir. 1994).

For purposes of criminal enforcement the language "cubby and flag set" in Condition No. 7 is too vague to pass constitutional muster under a void-for-vagueness challenge.  Under the facts of this case The language is too indefinite to prohibit a cubby without a flag after lynx season.  Wherefore, the court concludes that the government has failed to prove beyond a reasonable doubt that Mr. Judah violated Special Condition No. 7 of his Permit specific to the Kenai National Refuge.

**Summary**

The government has met its burden to prove beyond a reasonable doubt that Judah attempted to trap wolverine after the wolverine trapping season had closed as charged in the first violation notice.[4]  The government has not met its burden of proof with respect to using a cubby set after the close of lynx season  as charged in the second Violation Notice.[5]  The government concedes that Trap No. 1

---

[4] Violation No. 0735789, 11-po-032-JDR.

[5] Violation No. 0735790, 11-po-033-JDR.

did not constitute a cubby.  The government has not proved a violation of Special Condition No. 7 of the defendant's trapping Permit as charged because the language of the Permit does not clearly indicate the meaning of the language "cubby and flag sets are not allowed when lynx season is closed."  That language is unconstitutionally vague as applied to the facts of this case. Under separate cover a date and time will issue for imposition of sentence in 11-po-032-JDR.


DATED this  23rd day of March, 2012, at Anchorage, Alaska.


_/s/ John D. Roberts_
JOHN D. ROBERTS
United States Magistrate Judge